So we'll start this morning with our unit in Binn v. Bernstein, 191636, Ms. Feliciello. Good morning, Your Honor. Yes, my name is Roseanne Feliciello, Your Honor. Thank you. May it please the Court, Your Honor. Excuse me? You can proceed. Thank you. The District Court's opinion here suggests a fundamental misunderstanding of the facts. I would like to clarify. The plaintiff could have prevented this murder from going forward, and it would have been reasonable for them to do so if they had known the truth. Together, the Binns, husband and wife, controlled over 17% of the company. The murder documents required 95% of the shareholders to vote in favor and to join onto the joinder agreement. It's simple math. If the Binns didn't join the transaction and didn't sign those joinder agreements, there never would have been a murder. And it would have been reasonable for the Binns to withhold their consent here if they knew that Mr. Abbe, one of the defendants, also had an interest in the Rothmore note, or if they knew that the controlling group of the board were interlocking financial relationships and resented, or if they knew that the Rothmore note would continue to be an obligation of the merger, or if they knew that Defendant Heyer would be receiving shares post-merger and that Defendant Perlman would be receiving additional directorship after the merger at another public company controlled by the controlling group, as a quid pro quo. Thus, the defendants' misrepresentations and omissions about these facts, which caused the Binns to sign the joinder agreement, were material. These are the very type of facts that would likely be viewed by a reasonable investor as having significantly altered the total mix of information available. And defendants knew here that the plaintiffs could have prevented this merger. They engaged in an active campaign to mislead the Binns. They convinced the Binns that the merger with Farm Holdings was the best option, the only option for the company other than bankruptcy, the company that the Binns had spent 14 years of their life creating. Defendants also misled the Binns about the Farm Holdings' commitment to, and cash on hand available to, growth to spawn business. Excuse me. You have one more minute. After the merger, Farm Holdings sought additional capital, $6 million from the market. And most importantly, defendants misled plaintiffs about the relationship between and among the independent defendants. For instance, by 2016, plaintiffs were well aware of the leverage afforded to Mr. Bernstein by the way of his control of the Roths and were eager for the company to have another source of capital other than the Rothmore note. Playing into plaintiffs' concerns, Defendant Bernstein told Mr. Binn that Farm Holdings had plenty of cash on hand and would pay off the Rothmore note soon after the merger. He told Mr. Binn this before Mr. Binn voted in favor of the merger in August 2016. And nothing in Farm Holdings' public filings made after that time directly contradicted the idea that Farm Holdings, as a public company with access to capital, would continue to hold on to a $6 million note which was paralyzed by all of the company's assets. It would be indeed irrational for it to do so. But no one told the Binns that Defendant Richard Abbe, another director recently added to the Farm Holdings board just prior to the merger, also had an interest in the Rothmore note. It was publicly disclosed that Mr. Bernstein had an interest in the Rothmore note. And Judge Stanton held that this made it immaterial that Abbe also had an interest. It's plaintiffs' position that this actually goes...shows the materiality. That by disclosing partly that one of the directors had an interest in the Rothmore note, the company was then required to fully disclose that another one of the directors also had an interest in order to make the statement and representation accurate and wholly accurate. Okay. Judge Bianco, do you have any questions? Yes. Thanks, Judge Loyer. I just have three questions, Ms. Felicello. You spent a lot of time in the papers arguing that the district court abused its discretion in not allowing discovery, but there are numerous cases that we have decided, Paddington Partners, Contemporary Missions, Burlington Coat Factory, that says if you fail to file a 56-D affidavit, that itself is enough to find that the district court need not allow discovery for response to a summary judgment motion. So, correct me if I'm wrong, I don't think there's any case where we've ever said where you fail to file a 56-D affidavit, not putting something in your brief, not putting something in your opposition to 56.1 statement, an affidavit, that this would be the first time we're ever saying that that's an abuse of discretion. Can you address that? Yes, Your Honor. I think that it's inaccurate to say that we didn't comply with the requirements of 56-D. We did substantially follow the rule there. We filed a 56-D statement. We filed a declaration from Mr. Maloney that set forth the facts, and we also set forth affidavits from the VINs in which they incorporated the other statements. And so, it's not as though we have it only the arguing in the brief that we need discovery. It is supported by affidavits and declarations. No, but their affidavit didn't list what discovery was necessary. It simply referenced the 56.1 statement, which only said we need this discovery for scienter loss causation and other legal issues. And if that's sufficient to satisfy 56-D, then 56-D is meaningless. That doesn't provide any detail about anything. Your Honor, there's a fundamental difference here. One, in Burlington and in the other cases, the court had not granted... There had been some discovery that had occurred, and it wasn't a case where there was a motion to dismiss that had been denied and then followed by no discovery and no permission for Rule 26 discovery. This is a very unusual set of circumstances, which defendants tried to downplay how unusual this was. And we did... The documents that we submitted did comply with 56-D by incorporating in their own affidavit, instead of just restating what was in those...in the Rule 56-D papers, they just incorporated it by reference. I mean, I don't think there was anything untoward about that. The idea that we would have to be in a position of Burlington when we haven't had any discovery at all, when you're talking about a securities case, that would be against a significant precedent of this court, including... Okay. Let me just ask you also about Abbey's alleged interest, the indirect interest in the Rockmore note. On the materiality issue, it was a combination of things that led the district court judge to find it was immaterial. Your client had sent an email stating that, I think, being acquired by FH is, at this point, the only decision we have. Mr. Bernstein's control over Rockmore was obviously disclosed. He had controlling interest in Rockmore. And the majority of the FB... Excuse me, the Foreign Holdings Board was still disinterested, even with this indirect interest. So, it was the combination of those things that led the district court to say that this indirect interest of Mr. Abbey, under those circumstances, wouldn't possibly have affected your client's decision here. So, can you address that? It's not one thing. It's the combination of all those things together. Yes, Your Honor. Well, the BIN has said that they expected and were told by Mr. Bernstein that the Rockmore note was going to be paid off soon after the merger. And thus, if they had known that there was another director who also wanted to have an interest in maintaining the Rockmore note with the company, that would have been a significant fact for them. And they... This is not a case where you're dealing with whether it may have made a difference. We know that it would have made a difference. We know that the plaintiffs here had the ability, because of their over 17% interest and the requirements of the joint agreement, to prevent this merger from going forward. And so, if they had known... In their mind, Mr. Abbey was a completely independent person. They had no knowledge that he was connected with Bernstein, Mr. Bernstein, and the Rockmore note. If they had known that, that would have been an additional fact. And maybe it would have caused them to continue to investigate the connections between Mr. Rockmore... Mr. Bernstein and Abbey. I don't know. But they've said that it would have caused them not to vote in favor of the merger. And I think on summary judgment, when you haven't had any discovery and we haven't been able to get into anything about the intent of the parties or whether there was an expectation that they were going to... If there were any plans to make whole the Rockmore note. I mean, I think at this point, it was too early for the court to dismiss this case when you have... So, did you have another question? No, I'm done. Thank you. Okay. Judge Park? Yeah. Just one quick question. Thank you. Assuming you can't get any further discovery, don't all of the exchange act claims have a loss causation problem? I don't believe so, Your Honor. We... First of all, I don't see why. I mean, the court has already found... Well, how... Yeah, let me explain. How would you prove a loss causation on summary judgment without any discovery? Right. Well, Your Honor, in this case, we had prevailed on a motion to dismiss. We hadn't had the opportunity to conduct any discovery at all. And so, it would be fundamentally unfair and against the federal rules of civil procedure for us to not have the opportunity to engage in discovery for loss causation on loss causation here. I just don't see how that would work. So, maybe if I could ask it differently then. Of course. Assuming if the district court correctly denied the discovery, then are you conceding that you're unable to show loss causation? No, Your Honor. We've stepped forth that there was evidence that as the information, the truth, started to enter the market, the stock price started to reflect that truth. That's part of our complaint. And I think we've adequately stated the claim for loss causation, and I think we could back that up with evidentiary support. We haven't submitted... I mean, we weren't able to submit the evidence of... We really hadn't taken the opportunity to do that, because we were really focused on the fact that we had no discovery, that we should be entitled to discovery. But we did put in, and I think it's in our papers, the fact that as the truth began to The issue here is that, you know, on the loss causation point, my client's consideration for this murder continues to be locked up in escrow, controlled by defendants. And so, they haven't been able to... They finally were able to get access to some of the shares after we filed the complaint, but some of those shares, a good substantial portion of them are still locked up. And so, they haven't been able to even sell... So, you have reserved three minutes for rebuttal. We'll hear you after we hear a form from counsel for the appellees. Mr. Early, you have five minutes. Thank you, Your Honor. In fact, I believe I'm going to have four. Counsel for Mr. Abbey is going to remain seated for the entire three minutes. Okay. For Mr. Perlman, if he didn't want. May I please record? I'll try to respond to the questions directed to counsel. I think they're very effective and pointed. As to the point on discovery rule 50-60, 50-60 is very specific. Judge Stanton identified the requirements for 50-60 in his order when he allowed us to move for summary judgment and allowed plaintiffs to amend their complaint for the second time. The Burlington case lays it out. Your Honor cited to that this court has recently found where technical compliance rule 50-60 such that you identify the facts you need and, most importantly, how those facts are going to be applied to respond to the summary judgment motion. And I don't pen it to your appellant to do that in any way, shape, or form. And we cite the Demery v. Econnect deferred comp plan case. It's in our brief. It's 216 F-3rd, 283rd, 10th Circuit, 2000. Very similar to this case in that rule 50-60 was used, and rule 50-60 summary judgment was granted before discovery in a very counterfactual background. Mr. Abbey's counsel is on, but I can briefly touch on the question raised there. The materiality point as to the alleged failure to disclose Mr. Abbey's, I guess the best way to put it here is non-controlling interest in an entity that had a non-controlling interest in Rockmere, that somehow that is, A, necessary to be disclosed, which it's not, and, B, material is absurd, particularly given that all parties were aware Mr. Bernstein controlled the note, and with that knowledge the bin voted for the merger. Again, it's very important also to remember here that the bins not only were investors, the bins were directors. Mr. Bernstein was a director, so he was in all of the meetings where these discussions happened. As for S-4, as to the fact that this was the Rockmere note that it was not going to be a continuing debt, that's a difficult argument for anyone to make, given that the S-4 FA clearly states that it's going to continue. And, again, Mr. Bin sat in the board meetings where these conversations are and the law is clear that you can't rely on that. You can't rely on statements when you have written confirmation in a public filing. Lastly, loss causation, the case is perfect in that there was no great reveal here. All of the information at issue in this case existed prior to the transaction. There was no classic security matter where the, quote, truth came out. That didn't happen here. Your Honor, I can rest there. I'm happy to answer any questions. I don't have any questions. I just have one, Judge Park. Rule 26 allows for discovery that's relevant and proportional to the claims, and it seems that if there's no discovery allowed on a claim that did survive a motion to dismiss, then the proportion is sort of zero. In other words, by not allowing any discovery on a claim that survived, isn't it error? Because it's sort of implicit in that calculation that the district court was saying that there's no amount of discovery that would be warranted relevant and proportional in this case, even though there's still a claim that is pending for some adjustment. Can you address that? Sure. As Your Honor pointed out, the district court has wide discretion to manage discovery here, and this is what asked for Judge Stanton to manage discovery. I believe the purpose was Rule 5060 to manage the scope of discovery to make it proportional, as Your Honor pointed out. And I think it's also important to remember that there was a motion to dismiss on the first amended complaint. The appellant then amended it. There was a new complaint filed. They decided after surviving to amend the complaint. We sought to move for summary judgment, and Judge Stanton, using his discretion, said fine, set forth the rule to the appellant, and we used Rule 5060. Defendants want to move for summary judgment. If you can't respond appropriately, tell me why and what information you need to respond to. And if that would have happened, Judge Stanton arguably could have granted discovery, but our position is that appellants couldn't do that because there's no material issue of fact here. All the information that they want to know was known, and a perfect example of that is their complaint contains it all. They were able to access all of the information to make all these allegations about interrelationships. They consulted counsel prior to signing the agreement. They could have accessed all the information. It was all public. Mr. Early, thank you very much. We'll hear from Mr. Sabla. Yes, good morning, Your Honor. My name is Sabla for Appellee Richard Abbey. I'd like to touch on the discovery point that Your Honor raised. The rule in Rule 26 is relevant and proportional. 56D required the appellants to state why discovery was relevant. So before the inquiry about proportionality arose, it was a question of appellants showing why discovery was actually relevant. 56D requires certain steps in terms of showing what efforts have been taken to undertake discovery so far, why the discovery is relevant, and what discovery will be taken in order to show the relevance to the claims. None of those requirements was met. So the proportionality analysis, I would submit, takes place after the relevance analysis in 56D. Well, this is Judge Parker. If I could just follow up on that. I mean, isn't that backwards? The Rule 56 inquiry is after it's on summary judgment, why you couldn't get what you needed and what you need and how you plan to get it, whereas I was asking about Rule 26 just right off the bat. It survived the motion dismissed. It's on the way to summary judgment, but there's no discovery allowed. Implicit in that seems to be a ruling, in a sense, by district court, that there is no amount of discovery that would be proportional to a claim, which seems to be error if it's a claim that has survived. Is it not? The actual ruling, I believe, from the district court was that the parties could move for summary judgment. And if appellants thought that they needed discovery, they could make that showing through a 56D affidavit under Burlington Code. So it was incumbent on the appellants to show. This is Judge Lillie. So you're really saying you're ascribing the fault to the plaintiffs at the 56D post-26, Rule 26 stage? Exactly. Yeah. So it wasn't that there was no discovery allowed. It was that they had an opportunity but failed to satisfy the requirements under 56. Exactly. This is Judge Bianca. I would just put it slightly differently. In other words, Rule 6 does not absolve a party's compliance with Rule 5016 if a summary judgment motion is made at any time during the case. Exactly. Let me just ask you about the materiality point, Mr. Savoy. One of the arguments in the reply, and it was mentioned today, is that even though Mr. Bernstein had a controlling interest, controlled the note, they argue they expected your client to be a check on him. And if they had known he had this indirect interest, that might have affected their decision-making. Do you want to address that? Well, first of all, in terms of materiality, as your Honours have pointed out, it was Mr. Bernstein that it was disclosed that Mr. Bernstein controlled the Rockmore note. Nonetheless, the directors all voted for the merger. The idea that they would vote for the merger without any check on Mr. Bernstein, but if they'd known that Mr. Rockmore, Mr. Abbey, could serve as a check on Mr. Bernstein, that would have changed matters. It just doesn't make sense. The interest in the Rockmore note, as your Honours have also pointed out, was not an interest that Mr. Abbey had, it was an interest that ACM had. At most, Mr. Abbey had a minimal interest in the Rockmore note, along with others, because it was publicly disclosed that ACM is a retirement vehicle for the benefit of Mr. Abbey and others. In terms of materiality, I would submit the fact that the directors voted for the merger even though Mr. Bernstein incontrovertibly and publicly disclosed controlled the Rockmore note is dispositive on the issue of materiality. But just to follow up on just Bianca's question, wasn't part of the mix of information that was material, at least to the plaintiffs, the absence of any real financial relationship between Mr. Abbey and Mr. Bernstein? Not just that Mr. Bernstein had a controlling interest and Mr. Abbey didn't. They wanted to know that there was a financial stake here that Mr. Abbey had that might have called into question his independence as a director. Well, I know that's the argument they're making, but they've cited no duty, and certainly not a duty specific to Mr. Abbey, to make that disclosure. So that's your answer, is that they really haven't cited any law? Yes, they haven't cited any law in favor of a duty that was on the defendants, let alone on Mr. Abbey specifically to make that sort of disclosure about an indirect interest. And was it not disclosed at some level in the S-4? Am I wrong or right about that? It was disclosed that Mr. Bernstein had a controlling interest. What wasn't disclosed is the linkage between Mr. Abbey and the Rockwell note. All right, so we'll hear from Mr. Dumaine. Thank you, Your Honor. May it please the court, this is Ian Dumaine for defendant appellee Andrew Pearlman. I'd like to pick up where the court left off with respect to the Rockmoor note. And just to note with respect to Mr. Pearlman, there's no allegation in the Second Amendment complaint that Mr. Pearlman had any knowledge of Mr. Abbey's interest in the Rockmoor note. So to the extent that the case survives insofar as that allegation is concerned, it should not survive with respect to Mr. Pearlman. But I'd like to step back more generally with respect to materiality. Quentin's counsel's presentation focused exclusively on her own client's perspective with respect to the merger and why these various nondisclosures were material. I'm sorry, am I speaking over the court? No, no, go ahead. Go ahead. And I think it's important to note that the materiality test here is not a subjective test with respect to her clients who, as she points out, were insiders and had a very close connection to this company, but it's the materiality inquiries with respect to a reasonable investor. And the plaintiff appellants have cited no authority with respect to really any of these allegations that a reasonable investor would have viewed any of these alleged omissions or misrepresentations as material, as it would have related to this merger. Thank you. Thank you very much. Is there another quick point or are you... There's one more quick point, which is just essentially following up on Judge Park's question before. I believe Plaintiff's counsel has now conceded that without discovery on the paper as they stand it, as they stood, they did not submit any evidence with respect to loss causation. I think the briefs show that whether they had some evidence they might have submitted and didn't for some reason I think is beside the point. So I think loss causation has essentially been conceded on this argument. Okay. Thank you. Ms. Felicello. Hi, Your Honor. Thank you. Just a couple points. One, I believe that the case of Miller v. Wolpoff and Abramson, LLP from the circuit in 2003 is instructed as to whether you can have substantial compliance with Rule 56F. Excuse me. I looked at that case last night. In that case, because you cited that case, there was a 50-60 affidavit filed there in addition to putting in another document. So that is not a case where we have said a 50-60 affidavit, if it's completely absent, that the judge could still be abusing their discretion. It was an actual 50-60 affidavit filed in the Miller case. We did file our Rule 56.1B counterstatement signed by counsel identifying with particularity the areas of discovery to be required. That was filed in our case. I think maybe the question, at least in my mind, is just the with particularity statement that you just made. It was a broad reference. I think Judge Bianco made some reference to this earlier. It's just a very bare-bones filing. Well, in the Miller case, the court also said in that case that where you have a Rule 56.1 statement that is required before there's been any discovery, then the plaintiff cannot be faulted. They said, they quote, plaintiff cannot be faulted for failing to advise the district court precisely what information he might learn during discovery, given that the facts thought were exclusive within the defendant's possession and he had no previous opportunity to develop the record through discovery, unquote. That's directly from the Miller case at 303. And here, Sienter, as your honors know, is a relevant element of our claim. And how could plaintiffs possibly prove Sienter without the opportunity to review defendant's own documents and to take their depositions and to really get into what they were thinking? Once you've established, as we have, as shown by defeating the motions to dismiss, that we have stated a claim, then it's improper for the district court to have done what Sienter said and improperly credit misleading information provided by defendants without giving the plaintiff the opportunity to develop the record. Indeed, this court has held previously in Hallstrom v. U.S. Department of Veterans Affairs and its progeny that only in the rarest of cases may summary judgment be granted against the plaintiff who has not been afforded the opportunity to conduct discovery. And we submit that defendants have not explained why this is one of those rare cases where discovery would not be appropriate. When plaintiffs submitted their initial discovery request, defendants did not file a motion for a protective order. The discovery was so out of line that there was a motion even filed. In fact, the court just determined that it wanted to stay all discovery and instead use this alternate procedure under Rule 56. But that's not what the federal rules provide. Excuse me, Your Honor? I have a slightly separate question relating to a slightly separate issue, and it has to do with the SEC filings and disclosure. Is it not enough to have, for example, in connection with Mr. Bernstein's interest in the Mark Moore note, an SEC filing that discloses that? I'm sorry, Your Honor. Do you refer to Mr. Bernstein's interest or Mr. Abbey's? Mr. Bernstein's interest in the record was disclosed. Yes, but Mr. Abbey's relationship was also somewhat disclosed in the SEC filing, was it not? There's a factual error in the record there, Your Honor, a factual error made by the court, in that Mr. Abbey's interest in American Capital Management was disclosed in two other companies' filings, 13G's by Tapimune and the other company is escaping my mind at the moment. But that was disclosed. But American Capital Management's interest in the Rockmore note was not disclosed. In fact, plaintiffs only learned about it when Mr. Bernstein's ex-wife sent the information to plaintiffs' counsel unsolicited. And, indeed, defendants attempted to and were successful in putting that document under seal for some time, up until the New York State court unsealed the document. So to say that it was out there in the public and publicly available… And you also argue that the fact that the Rockmore note would be paid off in full shortly before the contemplated merger, that that representation was a misrepresentation, is that right? The misrepresentation was that it was going to be paid off soon after the merger. And what the SEC disclosure says is that it is going to be a liability of the company after the merger. That didn't mean…it didn't say anything about the timing and for how long it would remain a liability. And Mr. Bin reasonably believed Mr. Bernstein that soon after, the company would take the cash that Mr. Bernstein claimed it had and pay that off, rather than maintain it on the books. You have to remember, this Rockmore note was about $6.5 million at the time, but it was also collateralized by all of the assets of the company. This was a business that was doing revenue of over $40 million a year on a regular basis. And so it would be irrational for a public company that had access to public markets to continue to hold this note that was also paying interest at 11% a year to Mr. Rockmore if there were not some other reason for it to keep it on the books when it was… Thank you. Thank you very much. Thank you very much. Are there any other questions, Judge Bianca or Judge Park? No. Thank you. Thank you, Your Honor. Thank you. Thank you. We'll reserve the decision and we'll hear…